## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NONSO EMMANUEL         :
ONYEKWULUJE,            :
      Plaintiff,            :
                          :
      v.                 :       **CIVIL ACTION NO. 23-CV-0412**
                          :
UR MENDOZA JADDOU, *et al.*   :
      Defendants.         :

## MEMORANDUM

PRATTER, J.                                MARCH 21, 2023

*Pro se* Plaintiff Nonso Emmanuel Onyekwuluje filed a Complaint against federal officials, including the Director of the United States Citizenship and Immigration Services ("USCIS") and the United States Attorney General. Mr. Onyekwuluje asserts due process and equitable estoppel claims, alleging that immigration officials caused a three-year delay in processing his March 1989 application for United States citizenship. As relief, Mr. Onyekwuluje asks the Court to compel the USCIS to schedule his naturalization ceremony and declare him a United States citizen. Mr. Onyekwuluje seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Mr. Onyekwuluje leave to proceed *in forma pauperis* and dismiss the Complaint without prejudice for lack of subject matter jurisdiction.

## I.    FACTUAL ALLEGATIONS[1]

Mr. Onyekwuluje alleges that he entered the United States with an F-1 student visa in December 1981 and became a lawful permanent resident two years later. (Compl. at 2.)[2] On

---

[1] The facts set forth in this Memorandum are taken from Mr. Onyekwuluje's Complaint (ECF No. 2) and public dockets of which the Court may take judicial notice. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993); *United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 439 n.3 (E.D. Pa. 2020).

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

March 31, 1989, Mr. Onyekwuluje applied to become a United States citizen.  (Compl. at 2.)  On June 21, 1989, his application "was approved by the INS examiner."  (*Id.*)[3]  This approval was based in part on Mr. Onyekwuluje "successfully pass[ing] his civic exam for citizenship."  (Compl. at 3.)  The examiner advised Mr. Onyekwuluje that he should receive in the mail a "form N455," which was a "notice to appear for swearing in" at a ceremony where he would give his "oath of allegiance."  (*Id.* at 2.)  The Court understands Mr. Onyekwuluje to be referring to the "Form N-445 Notice of Naturalization Oath Ceremony," which the USCIS uses (and the INS used previously) to notify a naturalization applicant about their scheduled naturalization ceremony, including the date, time, and location of that ceremony."[4]

Mr. Onyekwuluje alleges that after his application was approved, the INS sent him a Form N-445 using an old address at which Mr. Onyekwuluje no longer lived.  Because the INS used an outdated address, he was unaware that it was sent.  (Compl. at 2.)  Mr. Onyekwuluje alleges that the INS knew that he lived elsewhere, at least as of the Summer of 1991, because the INS sent him a renewed Green Card at that other address.  (*Id.*)  On March 17, 1993, more than three years after Mr. Onyekwuluje applied to become a citizen, the INS sent him a notice advising that it would be recommending to the district court that his application for naturalization be denied for "lack of prosecution."  (*Id.*)  The notice was allegedly sent to an address that Mr. Onyekwuluje "had long vacated from."  (*Id.*)  Mr. Onyekwuluje further states that on April 30, 1993, the INS prepared a

---

[3] The INS, which stands for the Immigration and Naturalization Service, is the predecessor agency to the USCIS.  In March of 2003, the USCIS assumed responsibility for the immigration service functions from the INS.  *See Our History, U.S. Citizenship and Immigration Services,* available at https://www.uscis.gov/about-us/our-history (last accessed March 20, 2023).  The Court may take judicial notice of information posted on official public websites of Government agencies.  *See Vanderklok v. United States,* 868 F.3d 189, 205 n.16 (3d Cir. 2017); *Sturgeon v. Pharmerica Corp.,* 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020).

[4] *See Naturalization Ceremonies, U.S. Citizenship and Immigration Services,* available at https://www.uscis.gov/citizenship/learn-about-citizenship/naturalization-ceremonies (last accessed March 20, 2023).

list of 24 applicants' names, including Mr. Onyekwuluje's, whose applications the INS would recommend to the federal district court be denied. (*Id.*) The reason stated for Mr. Onyekwuluje's recommended denial was "lack of prosecution." (*Id.*)[5]

On December 15, 1993, after an eleven-day trial in the Eastern District of Pennsylvania, Mr. Onyekwuluje was found guilty of conspiracy to import heroin, in violation of 21 U.S.C. § 963 and importation of heroin and aiding and abetting, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 18 U.S.C. § 2. *See United States v. Mr. Onyekwuluje*, Crim. No. 93-cr-0349-2, ECF Nos. 124-131, 138-140, 142, 210. On August 30, 1994, he was sentenced to 145 months of imprisonment and four years of supervised release for these crimes. *See id.* at ECF No. 210-11. Mr. Onyekwuluje makes no mention of these convictions in his Complaint.

In early 2002, Mr. Onyekwuluje submitted a Freedom of Information Act ("FOIA") request to the INS, requesting "the result" of the INS's March 1993 recommendation to the district court

---

[5] In August of 2017, Mr. Onyekwuluje filed a document titled "Petition to Compel the USCIS to Complete Naturalization Proceeding by Scheduling Taking of the Oath of Allegiance" which was docketed as a civil case and assigned to a different judge in the Eastern District of Pennsylvania. *See Onyekwuluje v. Sessions, et al.*, Civ. A. No. 17-mc-135 (E.D. Pa.), at ECF No. 1. The 2017 case was ultimately closed and Mr. Onyekwuluje was advised that to pursue the matter, he would need to file a proper Complaint and either pay the filing fee or file a motion to proceed *in forma pauperis. Id.* at ECF No. 5. Mr. Onyekwuluje returned with the Complaint in this case. The Complaint in this case and the Petition in his 2017 case assert very similar factual allegations and seek the same relief.

In his 2017 case, Mr. Onyekwuluje attached exhibits to his Petition that he did not attach to the Complaint in this case. The Court may take judicial notice of these exhibits. *See Kindred Healthcare*, 469 F. Supp. 3d at 439 n.3 (taking judicial notice of a complaint filed in a prior lawsuit and noting that it is proper to take judicial notice of "court filings that are publicly filed on the docket of a district court"). The exhibits include, among other things, a March 17, 1993 "Notice to Petitioner of Proposed Recommendation of Denial of Petition for Naturalization." *See* Civ. A. No. 17-mc-135, at ECF No. 1. The Notice appears to have been sent to Mr. Onyekwuluje at 8229 E. Roosevelt, Apt. D-8, Philadelphia, Pennsylvania 19152. *Id.* The Notice states that the INS intends to recommend to the district court at a hearing scheduled for April 13, 1993, that Mr. Onyekwuluje's petition for naturalization be denied for lack of prosecution. (*Id.*) The exhibits also include an April 30, 1993 document entitled "Naturalization Petitions Recommended to be Denied." The document includes a list of 24 names, including Mr. Onyekwuluje's and recommends that Mr. Onyekwuluje's petition be denied for "lack of prosecution." (*Id.*)

Mr. Onyekwuluje does not allege how he learned that the INS sent the Form N-445 or the March 27, 1993 Notice to his old address. Nor does he allege how he came into possession of March 17, 1993 Notice or the April 30, 1993 list of individuals.

to deny his petition for naturalization.  (Compl. at 3.)  In a January 30, 2002 letter responding to his FOIA request, the INS stated that it had "determined that if records exist, they would be maintained at the following government agency:  DOJ Executive Office for Immigration Review . . . ."  *See* Civ. A. No. 17-mc-135, at ECF No. 1.  Mr. Onyekwuluje alleges that the INS's response "showed [that] no order was entered by any Federal Court" denying his petition for naturalization.  (Compl. at 3.)  In other words, Mr. Onyekwuluje believes that his application for United States citizenship is still pending.  (*See id.*)

Mr. Onyekwuluje names the following defendants: (1) Ur Mendoza Jaddou, Director of the USCIS; (2) Merrick B. Garland, United States Attorney General; (3) "Jane Doe 1, 2"; and (4) "John Doe 1 and 2."  (*Id.* at 1.)  He asserts claims for equitable estoppel and due process based on allegations that defendants' negligence in sending his naturalization paperwork to an incorrect address caused an unnecessary delay.  (*Id.* at 3-4.)  Mr. Onyekwuluje requests the Court to compel the USCIS to send him the Form N-445 scheduling his naturalization ceremony and declare him a citizen of the United States.  (*Id.* at 4.)

## II.    STANDARD OF REVIEW

The Court will grant Mr. Onyekwuluje leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted);

4

*Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Additionally, the Court must review any claims over which subject matter jurisdiction is lacking.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.");  *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  Because Mr. Onyekwuluje is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

Mr. Onyekwuluje asks the Court to compel the defendants to complete the processing of his now 34-year-old naturalization application and grant him United States citizenship despite the intervening felony drug trafficking conviction that renders him presently ineligible for citizenship. He claims that his application had already been granted and that if the INS had not been negligent in sending the Form N-445 to the incorrect address, he would be a citizen and would have been such when he was convicted for drug trafficking.  Mr. Onyekwuluje alleges that the delay in processing his application caused by this negligence demonstrates "affirmative misconduct" on the part of the INS, which he believes supports claims for equitable estoppel and due process.

As set forth below, Mr. Onyekwuluje's Complaint must be dismissed because Mr. Onyekwuluje failed to meet his burden in identifying any basis for the Court's subject matter jurisdiction over this matter. Moreover, even if Mr. Onyekwuluje had identified a proper basis for subject matter jurisdiction, his claims would nevertheless fail on their merits.

Before addressing the reasons for dismissal, and to aid the analysis, the Court will briefly discuss the process and requirements for becoming naturalized as a United States citizen.

**A.    Background on Naturalization Requirements**

The Immigration and Nationality Act, 8 U.C.C. § 1101 et seq. ("INA") details the process for applying to become naturalized as a United States citizen. An applicant for naturalization is generally required to:

> (i) maintain five years' lawful permanent residence, physical presence in the United States for at least half of that time, and continuous residence from the date of application until admission to citizenship; (ii) submit an application; (iii) pass a background check; (iv) pass a test on United States history and government and establish his proficiency in communicating in English; (v) be examined under oath by an immigration official; and (vi) publicly swear allegiance to the United States and renounce allegiance to other sovereigns before the Attorney General or a competent court.

*Duran-Pichardo v. Att'y Gen. of U.S.*, 695 F.3d 282, 285 (3d Cir. 2012) (citing 8 U.S.C. §§ 1423(a), 1427(a), 1445(a), 1446(a) & (b), 1448(a)).

As part of a naturalization application, an individual must show that they are a "person of good moral character." *See* 8 U.S.C. § 1427(a)(3) (stating that "[n]o person . . . shall be naturalized unless such applicant . . . during all the periods referred to in this subsection has been and still is a person of good moral character . . . "). Congress has determined that applicants are not "of good moral character" if they have been "convicted of an aggravated felony (as defined in subsection (a)(43))." 8 U.S.C. § 1101(f)(8). Aggravated felonies include drug trafficking crimes, such as the importation of heroin and conspiracy to import heroin. *See* 8 U.S.C. § 1101(a)(43)(B) (defining

"aggravated felony" to include, among other things, "illicit trafficking in a controlled substance . . . including a drug trafficking crime, as defined in section 924(c) of Title 18"); 18 U.S.C. § 924(c)(2) (stating that drug trafficking crimes include any felony punishable under the Controlled Substances Import and Export Act, 21 U.S.C. § 951 *et seq.*).

The INA requires the Attorney General to designate USCIS employees "to conduct examinations upon applications for naturalization." 8 U.S.C. § 1446(b). Those designated "shall make a determination as to whether the application should be granted or denied." *Id.* § 1446(d). The "decision to grant or deny the [naturalization] application shall be made at the time of the initial examination or within 120 days after the date of the initial examination." 8 C.F.R. § 335.3(a). If a naturalization application is denied, an applicant may challenge the denial by requesting a hearing before an immigration officer. 8 U.S.C. § 1447(a). If an applicant is not notified of a decision within 120 days of the initial examination, they "may apply to the United States district court in which [they] reside[] for a hearing on the matter." *Id.* § 1447(b). That district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." *Id.*

### B.   Analysis

Before addressing the merits of Mr. Onyekwuluje's claims, the Court must consider whether it has subject matter jurisdiction. It is Mr. Onyekwuluje's responsibility to plead a basis for federal court jurisdiction. *See* Fed. R. Civ. P. 8(a)(1); *Gibbs v. Buck*, 307 U.S. 66, 72 (1939) (holding that it is the plaintiff's burden to demonstrate jurisdiction ). Mr. Onyekwuluje asserts that the Court has jurisdiction pursuant to the Administrative Procedure Act ("APA") and pursuant to 28 U.S.C. § 1361, which codifies the common law writ of mandamus. (Compl. at 3.) The APA generally permits "[a] person suffering legal wrong because of agency action, or adversely affected

or aggrieved by agency action" to seek judicial review of that action. 5 U.S.C. § 702. Under judicial review, district courts may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also Abulkhair v. President of U.S.*, 494 F. App'x 226, 230 (3d Cir. 2012) (*per curiam*). Section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus relief is generally considered a "drastic" remedy, "to be invoked only in extraordinary situations." *Kerr v. United States Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 402 (1976).

The Court understands Mr. Onyekwuluje to be alleging that the APA and Section 1361 confer subject matter jurisdiction because the INS "unreasonably delayed" ruling on his application for naturalization by negligently sending his naturalization paperwork to the wrong address. Mr. Onyekwuluje does not dispute, however, that the INS took some subsequent agency action by recommending that his petition be denied. Regardless of whether the INS's actions or inactions with respect to Mr. Onyekwuluje's naturalization application can be considered a "delay," the relief that Mr. Onyekwuluje seeks in this case – to compel the USCIS to resend his Form N-445 and "officially declare him a citizen of the United States" – improperly interferes with USCIS discretion and thus impacts the Court's subject matter jurisdiction.

A plaintiff seeking to assert jurisdiction under the APA or Section 1361 must show that the agency action to be compelled is a non-discretionary duty. *Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005) ("To support APA jurisdiction, the agency action must be final, it must adversely affect the party seeking review, and it must be non-discretionary."); *Brobst v. Att'y Gen. United States*, 807 F. App'x 184, 186 (3d Cir. 2020) (*per curiam*) (stating that mandamus relief is available only when the defendant owes "a clear nondiscretionary duty") (quoting *Heckler v. Ringer*, 466

U.S. 602, 616 (1984)).  *See also U.S. ex rel. Vaso v. Chertoff*, 369 F. App'x 395, 399-401 (3d Cir. 2010) (stating that "writs of mandamus are only available to compel a legal duty which is a specific, plain ministerial act devoid of the exercise of judgment or discretion" (citation and quotation marks omitted); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("[The APA] empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." (citations and quotations omitted)). Resending a Form N-445, which schedules the naturalization ceremony, and declaring someone a U.S. citizen, are not non-discretionary acts required by the USCIS.  Rather, the INA makes clear that "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."  8 U.S.C. § 1421.  Accordingly, the APA and Section 1361 do not confer subject matter jurisdiction over Mr. Onyekwuluje's claims.[6]  Accordingly, his Complaint must be dismissed without prejudice.

However, even if the Mr. Onyekwuluje could identify a proper basis for the Court's jurisdiction, his claims would nevertheless be dismissed.  Mr. Onyekwuluje asserts equitable estoppel and due process claims based on the defendants' alleged negligence and "affirmative misconduct" in forwarding the naturalization paperwork to his old address.  He alleges that the three-year "delay" between the time he passed his citizenship examination and the INS's petition

---

[6] Although Mr. Onyekwuluje makes no mention of 8 U.S.C. § 1447(b) nor requests a hearing concerning his naturalization application, even if he had, the Court notes that Section 1447(b) does not confer subject matter jurisdiction over his case. Section 1447(b) permits naturalization applicants who are not notified about their application within 120 days of the initial examination under oath to "apply to the United States district court of the district *in which the applicant resides* for a hearing on the matter."  *Id.* (emphasis added). Although Mr. Onyekwuluje provides a Philadelphia, Pennsylvania address for himself in his Complaint (*see* Compl. at 1), he states in his Motion to Proceed *In Forma Pauperis* that he "is currently *residing* in" Nigeria and has been employed in Asaba, Nigeria from 2010 to present (*see* ECF No. 1 (emphasis added)).

to deny his citizenship violated his rights and entitles him to a naturalization ceremony and to be declared a United States citizen.[7]

Equitable estoppel claims may be asserted against government entities in immigration cases. *DiPeppe v. Quarantillo*, 337 F.3d 326, 335 (3d Cir. 2003). To state a claim for equitable estoppel, a plaintiff must allege (1) a misrepresentation; (2) upon which he reasonably relied; (3) to his detriment; and (4) affirmative misconduct. *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 99 (3d Cir. 2006). Mr. Onyekwuluje alleges that the "INS unequivocally delayed the completion of his naturalization process" by using an incorrect address to forward him his Form N-445 and that this constitutes "clear affirmative misconduct." (Compl. at 3.)

These allegations do not state a plausible claim for equitable estoppel. Assuming the INS's statement to Mr. Onyekwuluje that he would receive a Form N-445 in the mail was a misrepresentation and assuming Mr. Onyekwuluje relied on that statement to his detriment, the claim nevertheless fails because the allegations do not support a finding that the INS engaged in affirmative misconduct or otherwise intended to mislead Mr. Onyekwuluje. At best, these allegations show negligence on the part of the INS in failing to send the Form N-445 and other naturalization paperwork to Mr. Onyekwuluje's then most current address. Negligence does not

---

[7] To the extent that Mr. Onyekwuluje asserts constitutional claims against the named federal officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971) ("*Bivens*") or negligence claims under the Federal Torts Claims Act ("FTCA"), those claims would also fail. The FTCA only provides for money damages not injunctive relief. *See Priovolos v. F.B.I.*, 632 F. App'x. 58, 59 n.1 (3d Cir. 2015) (*per curiam*) (citation omitted). Mr. Onyekwuluje only seeks injunctive relief and not money damages. Accordingly, the FTCA does not provide a remedy. In any event, even if Mr. Onyekwuluje had requested money damages, his claims would be barred by the FTCA's two-year statute of limitations. *See Santos ex rel. Beato v. United States*, 559 F.3d 189, 194 (3d Cir. 2009) (citing 28 U.S.C. § 2401(b)). Similarly, assuming *arguendo* that a *Bivens* remedy exists, such a claim is also time-barred. *See Brown v. Tollackson*, 314 F. App'x 407, 408 (3d Cir. 2008) (*per curiam*) ("The statute of limitations for a *Bivens* claim . . . is borrowed from the forum state's personal injury statute."); 42 Pa. Cons. Stat. § 5524 (Pennsylvania's statute of limitations for personal injury actions is two years); *Omar v. Blackman*, 590 F. App'x 162, 165 (3d Cir. 2014) ("Therefore, in Pennsylvania, actions brought under . . . *Bivens* are subject to a two-year limitations period.").

constitute affirmative misconduct. *See Peralta v. Att'y Gen. of U.S.*, 423 F. App'x 166, 168 (3d Cir. 2011) (*per curiam*) (holding that the government's failure to learn of 1998 deportation proceedings before subsequently granting the plaintiff lawful permanent resident status "at most constitutes negligence, which cannot support application of equitable estoppel"); *Olopade v. Att'y Gen. of U.S.*, 565 F. App'x 71, 74 (3d Cir. 2014) (*per curiam*) ("Olopade's allegations suggest negligence, at best, and not affirmative misconduct on the part of the Government.").

Moreover, although Mr. Onyekwuluje characterizes the INS's mistake in using his old address as a "delay," according to Mr. Onyekwuluje's own allegations, the INS was acting on his application by sending the Form N-445 to what was believed to be Mr. Onyekwuluje's address, *albeit* an incorrect one.  In any event, to the extent that anything the INS did or failed to do caused a delay in processing Mr. Onyekwuluje's application, delay alone is not affirmative misconduct. *See Mudric*, 469 F.3d at 99 (concluding that petitioner failed to state a claim for equitable estoppel when the government's delay in processing his asylum claim, although "unfortunate" and "unjustified," did not constitute affirmative misconduct); *Castro v. Att'y Gen. of U.S.*, 444 F. App'x 622, 625-26 (3d Cir. 2011) (concluding that delay in processing application for cancellation of removal that was negligent, "irresponsible," and caused a "terrible consequence," did not amount to affirmative misconduct to establish an equitable estoppel claim).

Even if Mr. Onyekwuluje's allegations supported a finding of affirmative misconduct, which they do not, the relief Mr. Onyekwuluje requests is now foreclosed by his intervening 1993 aggravated felony convictions for conspiracy to import heroin and importation of heroin.  As the Court noted above, Mr. Onyekwuluje's 1993 aggravated felony convictions are inconsistent with a finding of "good moral character," which is a requirement for naturalization. *See* 8 U.S.C. §§ 1427(a)(3), 1101(f)(8); *Baptiste v. Att'y Gen. United States*, 806 F. App'x 83, 85 (3d Cir. 2020)

(*per curiam*) (stating that cocaine importation was an aggravated felony that prevented petitioner from making a showing of good moral character); *Salim v. Ashcroft*, 350 F.3d 307, 310 (3d Cir. 2003) ("Salim cannot complete his application process and become a citizen because he is permanently ineligible for citizenship as a result of his 2001 conviction of an aggravated felony."). Moreover, there is no authority to consider Mr. Onyekwuluje's claims retroactively when his application was approved and before he was convicted. *See Baptiste v. Att'y Gen. United States*, 776 F. App'x 94, 98 (3d Cir. 2019) (*per curiam*) (rejecting argument that "naturalization application should be considered as if [the petitioner] were not an aggravated felon" because retroactive relief is not available and his "aggravated felony renders him presently ineligible for naturalization"). Accordingly, the equitable estoppel claim fails.

Mr. Onyekwuluje's Fifth Amendment due process claim fails for similar reasons.[8] Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in "property" or "liberty." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Mr. Onyekwuluje states that he was denied his "right [to] citizenship to the United States" in violation of the due process clause. (Compl. at 4.) The Court understands Mr. Onyekwuluje to be alleging that because his naturalization application had already been ministerially approved and he was only waiting to give his oath of allegiance at a naturalization ceremony, the INS's failure to notify him about that ceremony denied him his liberty interest in citizenship. Mr. Onyekwuluje's claim is not plausible, however, because he had

---

[8] Although Mr. Onyekwuluje references Fifth and Fourteenth Amendments, the Fifth Amendment due process clause applies here. *See Dusenbery v. United States*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.' ").

not yet taken an oath of allegiance.

United States citizenship status is not acquired until after the oath of allegiance has taken place. *See* 8 U.S.C. § 1448 (stating that "[a] person who has applied for naturalization shall, *in order to be and before being admitted to citizenship*, take in a public ceremony before the Attorney General or a court with jurisdiction . . . an oath (1) to support the Constitution of the United States; . . ."); *see also Reyes v. Att'y Gen. of U.S.*, 514 F. App'x 129, 132 (3d Cir. 2013) ("[The public oath of allegiance is a condition of naturalization, and the failure to take it means that a person is not a citizen and subject to removal despite fulfillment of the other requirements for naturalization."). There is no "almost a citizen" status. Thus, because Mr. Onyekwuluje had not yet "obtained any recognizable interest in the grant of his naturalization application without taking that Oath," *see Duran-Pichardo*, 695 F.3d at 286, his intervening felony convictions make him presently ineligible to now take the oath and be declared a United States citizen. *See id.* at 285-86 (rejecting argument that the petitioner's "satisfactory completion of all of the other requirements for naturalization created a liberty interest in citizenship" because failure to take the oath means he "never became a citizen and remained subject to removal").

Even if he could allege a liberty interest, to the extent that Mr. Onyekwuluje alleges that the three-year period when the INS sent him naturalization paperwork at an incorrect address constitutes a "delay," this cannot be the basis of a plausible due process claim. Mr. Onyekwuluje waited over 15 years to seek judicial relief on his naturalization application. When Mr. Onyekwuluje did not receive any naturalization paperwork in the mail during that time period, he could have requested a Section 1447(b) hearing. Failing to avail himself of this or any other administrative remedy undermines any claim that he was denied due process, much less that the denial was the result of a delay, the length of which was 20% the length of his own delay to act.

*See Duran-Pichardo*, 695 F.3d at 286-87 & n.7 (holding that petitioner who "failed to invoke the very statutory and regulatory scheme that Congress enacted to address this type of delay," could not thereafter "assert that he was deprived of due process of law"); *Baptiste*, 776 F. App'x at 98 (rejecting due process claim based on delay in adjudicating a naturalization application where the petitioner "did not use [the § 1447(b) hearing] process while he was still potentially eligible for naturalization" and "[i]nstead, he waited over seven years after filing his 2011 naturalization application to request a hearing . . . [when in] the meantime, his 2013 aggravated felony conviction rendered him ineligible for naturalization"). Accordingly, Mr. Onyekwuluje fails to state a plausible due process claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Mr. Onyekwuluje leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice for lack of subject matter jurisdiction. Leave to amend will not be given as any attempt to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). A final order follows.

BY THE COURT:

GENE E.K. PRATTER, J.

14